

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 4 2022

CLERK, U.S. DISTRICT COURT
By_____ Deputy

| | |
|---|---|
| LINDSAY CRAVEN, | § |
| | § |
| Movant, | § |
| | § |
| v. | § |
| | § |
| UNITED STATES OF AMERICA, | § |
| | § |
| Respondent. | § |

**2-22CV-045-Z**

Civil No. 2:22-cv-_____
Crim No. 2:19-cr-00019-Z-BR-1

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, LINDSAY CRAVEN ("Craven"), appearing *pro se,* and in support of this motion would show as follows:

### I. STATEMENT OF JURISDICTION

Craven is timely filing a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant ("§ 2255 Motion") contemporaneously with this Memorandum of Law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2255. Section 2255 relief may be afforded if the movant's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660 (5th Cir. 2012).

## II. <u>STATEMENT OF THE GROUND FOR REVIEW</u>

A.     Whether pretrial counsel's failure to: (1) Communicate with Craven and inform her of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) File any substantive pretrial motions; (3) Conduct an adequate and independent pretrial investigation; and (4) Attempt to negotiate a favorable Plea Agreement deprived Craven of effective assistance of pretrial counsel under the Sixth Amendment of the Constitution of the United States.

B.     Whether sentencing counsel's failure to: (1) Properly discuss and explain the PSR to Craven prior to the sentencing hearing; (2) File substantive objections to the PSR; and (3) Argue for mitigation of punishment and object to her sentence being substantively unreasonable; and (4) File a Notice of Appeal deprived Craven of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence.

## III. <u>STATEMENT OF THE CASE</u>

### A.     <u>Procedural Background</u>

On September 13, 2019, Craven waived her right to prosecution by Indictment. See Doc. 66.[1]

---
[1]

     "Doc." refers to the Docket Report in the United States District Court for the Northern District of Texas, Amarillo Division in Criminal 2:19-cr-00019-Z-BR-1, which is immediately followed by the Docket Entry Number.

On October 2, 2019,  grand jury sitting in the United States District Court for the Northern District of Texas, Amarillo Division, returned a one (1) count Superseding Information charging Craven. See Doc. 69. Count 1s charged Craven with Possession Intent to Distribute a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *Id.*

On October 4, 2019, a Re-arraignment Hearing was held and Craven pled guilty to Count 1s of the Superseding Information, pursuant to a written Plea Agreement. See Docs. 63, 71.

On March 3, 2020, Craven was sentenced to a term of 240 months imprisonment, 3 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 83, 86.

**B.**    <u>**Statement of the Facts**</u>

1.    <u>Offense Conduct</u>

The United States and Craven, through the advise of her counsel, agreed and stipulated to the following Factual Resume:

> From on or about a date unknown, to on or about September 12, 2018, in the Amarillo Division of the Northern District of Texas, and elsewhere, Lindsay Craven, defendant, did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

3

On September 12, 2018, Drug Enforcement Administration (DEA) and
Potter County Sheriff's Office (PCSO) Agents were investigating
Lindsay Craven and Matthew Reeves for narcotics distribution. A
tracking device had been installed on Reeves' vehicle by PCSO agents.
The tracker showed that on September 12,2018, Reeves was traveling
back to Amarillo, Texas, from California.

Agents were also following Craven, who had left Amarillo, Texas, and
traveled to the Chisum Travel Center located in San Jon, New Mexico.
While at the travel center, Craven met with Reeves. During the
encounter, Agents observed Reeves place a white ice chest into Craven's
vehicle. Craven then left the travel center and began traveling back to
Amarillo, Texas, on Interstate 40.

Craven was stopped by PCSO Deputy Stelton Crain for two traffic
violations on Interstate 40, approximately mile marker 56. Deputy Crain
asked Craven for consent to search the vehicle and Craven granted
consent. The white ice chest was located in the vehicle. Underneath ice
and bottles of water, Deputy Crain located two clear bags containing a
crystalline substance, which later filed-tested positive for
methamphetamine. The substance weighed approximately 10.5 pounds.
This amount of methamphetamine is consistent with distribution, as
opposed to personal use. Craven was arrested for possession of the
suspected methamphetamine.

DEA Task Force Officer Jose Barron and several other investigators
made contact with Craven at the Potter County Sheriff's Office. Craven
was read her *Miranda* warnings prior to being questioned. Craven stated
that methamphetamine was being transported from Sinaloa, Mexico, to
California. Craven stated that she would travel to California to pick up
the methamphetamine at different hotels. Craven admitted to selling 35
to 50 pounds every 3 to 4 weeks.

Reeves was apprehended at an abandoned gas station located on I-40
near mile marker 22. Reeves was transported to the DEA office in
Amarillo, Texas for questioning.

4

Once at the DEA office. Reeves was read his *Miranda* warnings. Reeves waived his rights and agreed to make a statement. Reeves admitted that he has been picking up loads of methamphetamine for Craven. Reeves admitted that he sold small amounts of methamphetamine to make money.

On September 13, 2018, a search of Craven's home was conducted. Officers located evidence of narcotics trafficking and three firearms inside the home.

The suspected methamphetamine was sent to the DEA South Central Laboratory. On February 26, 2019, the DEA Laboratory confirmed that the substance was in fact methamphetamine, a Schedule II controlled substance. The net weight was 4,595.3 grams with a 99% purity.

See Doc. 64 at 1-3.

### 2.   Plea Proceeding

On October 4, 2019, a Re-arraignment Hearing was held before Magistrate Judge Lee Ann Reno. See Doc. 71. Craven pled guilty to Count 1s of the Superseding Information, pursuant to a written Plea Agreement. See Doc. 63. In exchange for Craven's guilty plea, the government agreed not to bring any additional charges against Craven based upon the conduct underlying and related to her plea of guilty. *Id.* at 5.

### 3.   Sentencing Proceeding

On March 3, 2020, a Sentencing Hearing was held before Judge Matthew J. Kacsmaryk. See Doc. 83. At sentencing, the District Court sentenced Craven to a term

of 240 months' imprisonment, followed by three years of supervised release. See Doc. 86 at 2. The Court also ordered payment of a Mandatory Special Assessment Fee of $100. *Id.* at 1. No direct appeal was filed in this case.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the

6

court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *United States v. Batamula*, 823 F.3d 237 (5ᵗʰ Cir. 2016). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *United States v. Kayode*, 777 F.3d 719 (5ᵗʰ Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

7

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Craven must show that (1) her counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

8

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Craven] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *United States v. Grammas*, 371 F.3d 281 (5th Cir. 2004); *United States th v. Conley*, 349 F.3d 837, 839 (5th Cir.2003). In a ruling on a motion under § 2255, the court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A criminal defendant is also entitled to constitutionally effective assistance of counsel on direct appeal as of right. See *Evitts v. Lucey*, 469 U. S. 387, 396 (1985); *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014); *United States v. Reinhart,* 357 F. 3d 521, 531 (5th Cir. 2004). A criminal defendant has a Sixth Amendment right to the effective assistance of counsel on direct appeal. *Evitts*, 469 U.S. at 396. Claims for ineffective assistance of appellate counsel are governed by the two-part *Strickland* standard. See *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall

10

. . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255.

## V. DISCUSSION

As a preliminary matter, Craven respectfully requests that this Court be mindful that "[T]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011); ; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972).

A. **Pretrial Counsel's Failure To: (1) Communicate with Craven and Inform Her of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) File Any Substantive Pretrial Motions; (3) Conduct an Adequate and Independent Pretrial Investigation; (4) Attempt to Negotiate A Favorable Plea Agreement; and (5) Submit Truthful Disclosure of Prior Representation Deprived**

11

**Craven of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

1.      Failure to Communicate with Craven and Inform Her of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial

Chapter 1, Rule 1.4: Communication of the Texas Rules of Professional Conduct states that:

(a)     A lawyer shall:

    (1)     promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

    (2)     reasonably consult with the client about the means by which the client's objectives are to be accomplished;

    (3)     keep the client reasonably informed about the status of the matter;

    (4)     promptly comply with reasonable requests for information; and

    (5)     consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)     A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Bonita L. Gunden ("Gunden"), was Craven's appointed counsel from pretrial to sentencing. There was not any reasonable communication from the beginning of this case between Craven and Gunden, so that she could effectively participate in her defense. She certainly did not meet the standard as set forth above in Rule 1.4 of the Texas Rules of Professional Conduct or any other professional norm for that matter. She failed to reasonably consult with Craven about the means to be used to accomplish her objectives other than push Craven to plead guilty.

In this case, Gunden visited Craven no more than four (4) times, as follows: (1) first meeting– getting to know session; (2) plea visit; (3) when she read the PSR; and (4) proffer interview. The frequency of visit is not in question, rather it is the substance of each visit. Gunden, in her visits discussed no option to Craven but to plead guilty to receive a reduction in offense level for acceptance of responsibility. Initially, Gunden speculated a 10- to 15-year sentence. The government's first offer was for 25 years and eventually went to 20 years. Instantaneously, Gunden came back coercing to take the 20-year plea offer or else she would receive a life sentence should she opt to proceed to trial and lose. Gunden would insistently advise Craven

13

that the only hope was to plead guilty and accept responsibility, this was her only strategy.

Craven has zero (0) criminal history prior to the commission of the instant offense, yet, Gunden persuaded her to plead guilty straight up to the Superseding Information by saying that she will receive a life sentence should she opt to go to trial and Gunden assured Craven that they won't win trial. Gunden never discussed the possible outcome of a trial – except for receiving a life sentence.

**Fact:** Craven pled guilty to Count 1s for possession with intent to distribute a detectable amount of methamphetamine, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C)– which carries a mandatory sentence of 20 years. Meaning, even if Craven went to trial and failed, her imprisonment term would be no more than 20 years– which is the same length of sentence she received for pleading guilty and waiving her rights to appeal.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. Because Craven wholly relied on counsel's advice, Craven acquiesced to same. Gunden failed to consult and explain the general strategy and prospects of success and the likely result in the sentence she would receive. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Gunden failed to do so.

(2)   Failure to File Any Substantive Pretrial Motions

Gunden failed to file any substantive pretrial motions on behalf of Craven to determine the strength of its case-in-chief. Had she filed motions such as Motion for Discovery; Request for Rule 404(b) of the Federal Rules of Evidence [Material]; Motion for *Brady/Giglio* Material; and for Equal Access for Purposes of Interview; and a Motion to Suppress Evidence. Gunden filed no pretrial motions because from the beginning, she did not want to proceed to trial, so no strategy was ever developed.

The record in this instance speaks for itself. The U. S. District Court Docket Report reflects that there were **no substantive pretrial motions** filed by Gunden prior to Craven's re-arraignment. Gunden missed out on a golden opportunity to assess and evaluate the strength of the government's case and the evidence that they had against Craven.

In this case, there was no physical evidence presented in Court, except for the government's witnesses. Gunden's failure to request suppression of evidence, especially Craven's statements from the first contact with agents, things were "off."

Such fundamental pretrial motions are essential in the development and evaluation in assessing the strengths and weaknesses of the government's case and would have aided the defense in the decisional process of whether to negotiate a Plea Agreement or to proceed to trial. Because Gunden failed to perform her job dutifully,

15

Craven was unable to obtain the Discovery that she needed to be fully informed so that she could make an informed decision on whether to plead guilty or proceed to trial. Without this information, she was unable to make an informed decision. As such, she relied on Gunden's erroneous advice to her detriment. Had she been given the Discovery in order to assess and evaluate the government's case-in-chief, there is a reasonable probability that she would have opted to proceed to trial or plead guilty without a written Plea Agreement and kept all her rights to appeal. Gunden's representation was deficient because Craven was not properly informed of the relevant circumstances and likely consequences of pleading guilty as opposed to standing trial in order to make an informed decision about which course to take.

> (3)   Failure to Conduct An Adequate and Independent Pretrial Investigation

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal,* 239 F.3d at 688 (quoting *Baldwin v. Maggio,* 704 F.2d 1325, 1332-33 (5th Cir.1983)). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to

16

make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Gunden failed to conduct any kind of a reasonable independent pretrial investigation of her case. Gunden failed to research the case law, and utilize witness' statement or investigate the facts of Craven's case. Craven advised Gunden to interview a witness who was present Garcia-Morales held a gun to Craven's girlfriend's head at the time, but Gunden did not do anything in response to that information.

There was no independent pretrial investigation to challenge the government's case-in-chief. Gunden failed to move the Court for a private investigator to independently investigate her case. There was not any kind of independent pretrial investigation conducted whatsoever to Craven's knowledge except for reading the government's case file and discussing it with the government prosecutor. It is well settled in this circuit that a criminal investigation requires investigators to piece together evidence, often circumstantial and from multiple sources, to prove a defendant's innocence or guilt. See *Sawyer*, 799 F.2d at 1508 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary"(quoting *Strickland*, 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

Gunden did not put the government's case to any kind of adversarial test. Had she done so, there is a reasonable probability that Craven would have been found not guilty at trial or benefitted with a significantly less harsh sentence.

Accordingly, Gunden failed to research and properly prepare this case so that she could inform Craven of the relevant circumstances and likely consequences of her case so that she could make an informed decision of whether to plead guilty or to proceed to trial.

> (4)   Failure to Attempt to Negotiate a Favorable Plea
>        Agreement

The Fifth Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) (quoting *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)). When considering whether to plead guilty or proceed to trail, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an

18

intelligent choice. See *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003).

To obtain relief on an ineffective assistance claim, Craven ultimately must demonstrate that her attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, she would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to

19

a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U. S. Supreme Court decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In this case, it is not reasonable to plead guilty and accept responsibility to a drug amount that was not proven beyond reasonable doubt, to receive a sentence equal to the maximum sentence allowed by the law. If not for Gunden' erroneous assessment of Craven's inaccurate judgment of records; failure to secure a favorable Plea Agreement from the government; and incorrect advice, Craven would have opted to proceed to trial and receive a significantly less harsh sentence.

This present matter is similar to *Lafler* in that Craven was misinformed by Gunden of the likely consequences of pleading guilty rather than proceeding to trial. In fact, there is a reasonable probability that Craven would have proceeded to trial had Gunden not affirmatively misadvised her regarding her case. Craven was forced to wholly rely on Gunden's advice, and based on that advice, plead guilty and netted her a 240-month sentence. Had Craven been properly informed by Gunden, she would have had a correct understanding of the facts, law of the case and likely consequences in order to make an intelligent and informed decision of whether to proceed to trial or to plead guilty with a written Plea Agreement. "It is the lawyer's duty to ascertain if the plea is available, that it would have lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The

advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

Also, whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

In this case, Gunden failed to correctly familiarize herself with the relevant facts, case law, applicable sentencing guidelines and the relevant circumstance and likely consequences of a conviction in Craven's case. She failed to properly advise Craven of all these matters, which led her to a 240- month sentence. Had she done so, Gunden could have advised Craven of the actual correct options available, and there is a reasonable probability that she would have proceededo trial.

As such, Gunden performed below an objective standard of reasonableness. Had she familiarized herself with the facts and researched the applicable law and sentencing guidelines, she would have been able to correctly inform Craven of the likely consequences and hurdles that she faced if she pled guilty or proceeded to trial. She simply failed to do so, and as a result, Craven was prejudiced by receiving a 240-

month sentence. *Glover*, supra. Gunden's misrepresentation of material facts, which

Craven wholly relied on, constituted deficient performance. She suffered prejudice

from Gunden's acts and omissions when she received a 240-month sentence. As such,

Craven easily meets *Strickland*'s two prong test for ineffective assistance of counsel

and relief should be granted in the first instance. Gunden's errors in this case were so

blatant and flagrant that the Court can conclude that they resulted from a lack of

experience, or neglect rather than an informed professional deliberation. She failed

her duty to properly advise Craven.

Gunden's advice was not a predication, probability, or an estimate, but rather

a lack of communication with Craven. In turn, Craven had to wholly rely on her

erroneous advice. Thus, Craven was not fairly apprised of the consequences of her

decision to plead guilty. In other words, Craven's reliance on Gunden's significantly

flawed advice about the consequences of pleading guilty rather than proceeding to

trial violated her due process rights. See *Hill*, 474 U.S. at 56.

Accordingly, Craven's conviction and sentence should be vacated for relief in

the first instance.

**B.** **Sentencing Counsel's Failure To: (1) Properly Discuss and Explain the PSR to Craven Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; and (3) Argue for Mitigation of Punishment and Object to Her Sentence Being Substantively Unreasonable; and (4) File A Notice of Appeal**

**Deprived Craven of Effective Assistance of Sentencing Counsel Under the Sixth Amendment, A Fair and Just Sentence.**

1-2.   Failure to Properly Discuss and Explain the PSR to Craven and File Substantive Objections to the PSR

Prior to sentencing, the PSR was released by the Probation Office. Although Gunden raised objections to the PSR (2 out 3 were corrected), she failed to raise objections to the offense level enhancements in the instant case. Gunden should have argued the following:

> *Drug Calculation.* Counsel was ineffective for not objecting to the drug calculation or the amount of drugs Craven was held liable of. It is essential to note that Craven pled guilty to Possession with Intent to Distribute a Detectable Amount of Methamphetamine (Count 1s). The While Superseding Information did not allege any amount of drugs, under 841(b)(1)(C)– her PSR clearly held her accountable for 115.5 pounds of drugs even though evidence if only for 10.5 pounds.

> In *United States v. Powell*, 360 F. Supp. 3d 134 (N.D.N.Y. 2019), the Northern District of New York concluded that the defendant was eligible for relief because "[t]he drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by a jury beyond a reasonable doubt." *Id.* at 139. The fact that the evidence supported that the defendant was responsible for an amount of crack cocaine that would have allowed the government to indict him for a charge resulting in the same guidelines range was immaterial to determining eligibility under the First Step Act. *Id.* In *United States v. Johnson*, No. 01-cr-543, 2019 WL 2590951 (N.D. Ill. June 24, 2019), a defendant who admitted to a greater amount of crack cocaine than the indictment charged was eligible because, "[u]nder *Alleyne* [v. *United States*, 570 U.S. 99, 103 (2013)], the Government

cannot rely on a drug quantity that the Probation Office included in the PSR, when that drug quantity differed dramatically from the quantity found by the jury, to hold [the defendant] to a higher statutory penalty." *Id.* at *3.

Had Gunden properly objected to the amount of drugs attributed to Craven, then Craven's offense level would have been properly calculated based on 10.5 pounds of methamphetamine (at most) as opposed to the PSR calculation of 115.5 pounds.

Gunden's performance all throughout the instant case's proceedings was deficient and that deficiency resulted in prejudice to Craven because there is a reasonable probability that the Court would have imposed a less harsh sentence had Gunden been prepared. Accordingly, Craven's sentence should be vacated for resentencing.

*Firearm Enhancement*. Counsel was ineffective for not objecting to the 2-level firearm enhancement. It is essential to note that when Craven was arrested, no firearm was found in the car. More so, the gun was found in the house that does not have any drugs. The gun was not Craven's, hence, her offense level should have not been enhanced by 2 levels. Gunden could have requested for fingerprint testing and see if it matches Craven's but failed miserably. Had she done so, it would prove that the firearm was not Craven's nor did she know about the presence of the gun in the house. Because there was no evidence to counter the government's claim, Gunden failed to prove Craven's innocence.

**Fact:** On September 13, 2018, the Officers arrested Craven at about 12 noon, then she was interrogated for 13 hours. After the arrest and interrogation, they went to her house and asked if they can search her home. No warrant was served but Craven consented to the search. It is essential to note that Craven has not slept in more than 48 hours, hence, she was so high when she was pulled over). Craven was starved, scared, delirious, tired, confused, sore, etc, thus, she was not even sure what she said to the officers. When Craven approved the search, she did not think there was anything in the house, most especially no idea of the presence of gun. All she knew was she had all of Garcia's stuff (whilst he was in

the county jail) but did not know what it consisted of. The gun was not hers and she had no idea that she has or had a firearm in her home. As a result of the house search, the following items where found: pot for personal use, Santa Muerta Shrine that Garcia kept when he came over, scales with crystals on it. Because of all the drug paraphernalia found in Craven's place, Gunden opted not to fight the gun enhancement it would stick. Nonetheless, Craven's guilt for the drug crime does not necessarily make her guilty of the firearm.

*Adjustment for Role in the Offense*. Craven received a 4-level increase because she was allegedly an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, pursuant to USSG In the calculation of Craven's offense level, she was given a 4-level increase for her role in the offense, pursuant to USSG § 3B1.1(a).

Section 3B1.1 provides for 2-, 3-, and 4-level increases to the offense level if the defendant held an aggravating role in the offense:

> (a)   If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

> (b)   If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

> (c)   If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1. Applying the adjustment turns, first, on the size and scope of the criminal activity and, second, on the defendant's particular role in that activity. See USSG § 3B1.1, comment. (backg'd).

To apply a 3- or 4-level adjustment pursuant to § 3B1.1(a) or (b), the criminal activity must have involved at least five participants or have been "otherwise extensive." In the absence of such a criminal activity, the defendant may only be subject to a 2-level increase pursuant to § 3B1.1(c). Accordingly, in applying §3B1.1, the sentencing court must first determine the size and scope of the criminal activity.

The government bears the burden of proving by a preponderance of the evidence that the defendant should receive an aggravating role adjustment. See, e.g., *United States v. Al-Rikabi*, 606 F.3d 11, 14 (1st Cir. 2010); *United States v. Cruz Camacho*, 137 F.3d 1220, 1224 (10th Cir. 1998) ("The burden is on the government to prove, by a preponderance of the evidence, the facts necessary to establish a defendant's leadership role."). Upon finding that the government has met its burden of proving the requisite facts, the district court must apply the appropriate enhancement and has no discretion to decide whether to apply § 3B1.1. See *United States v. Jimenez*, 68 F.3d 49 (2d Cir. 1995). "[T]he determination of a defendant's role in an offense is necessarily fact-specific. Appellate courts review such determinations only for clear error. Thus, absent a mistake of law, battles over a defendant's status and over the scope of the criminal enterprise will almost always be won or lost in the district court." *United States v. Graciani*, 61 F.3d 70, 75 (1st Cir. 1995) (citations omitted).

**Fact:** Craven was the ex-girlfriend f Garcia's brother, who was lightly involved in the drug trafficking offense in question. Garcia would stay at Craven's house when he was in town and help her with rent. Garcia knew Craven was low key, had always struggled with bills, and working two jobs a lot. The last time, Garcia ended up going to Potter County jail for assault with a deadly weapon. The guys he answers to showed up wanting the money he owes, to wit: $86,000, but he was not answering his phone. Craven pulled-up the jail roster to show them Garcia was indeed in prison. Subsequently, Craven went to see Garcia in jail to notify him about the guys he owes money to. Garcia then instructed to Craven to do "this and that." Craven said she doesn't want to. However, the men from the outside and his family, both put a lot of pressure on Craven and insinuated harm on her family, therefore, she was obliged to

27

comply. Thinking that Garcia will only be gone for a few weeks, Craven decided to follow Garcia's requests and instructions. Craven constantly visited Garcia, answered calls for him, and did everything she was asked to do until she was pulled over. She did what she was told for about 2 ½ months, more importantly, she was never in-charge. In her recollection, the only thing the government has against her was probably her response during the interrogation when she was asked if she was the boss, and she think she answered something like, "Yah, I guess," or "Yah, kinda." Again, the interrogation happened when she was really high, scared, and delirious so everything was a blur.

Here, Gunden failed to challenge the 4-level enhancement for Craven's role in the offense. It was not proved by a preponderance of the evidence that Craven should receive an aggravating role adjustment. None of the defendants worked for Craven. Craven had no control or power over any of the defendants as Craven was nothing but a coerced mule. As previously mentioned, Craven was threatened to do drug transactions on behalf of Garcia.

*Safety Valve*. A skilled and careful criminal defense attorney can use the "safety valve" to avoid harsh sentences in many cases. The safety valve is set forth in § 5C1.2 of the Federal Sentencing Guidelines. It provides relief from the mandatory minimum sentence if the defendant has little to no criminal history (which is defined as 0 or 1 criminal history points) and if the defendant truthfully discloses everything he knows about the crime she committed prior to sentencing. Such disclosure requires that the defendant tell the Government everything about her actions and that she tell the Government about all of the actions of those who participated in the crime with her or who assisted her in any way.

Craven had zero (0) criminal history, interestingly, Gunden urged her to plead guilty to a case that she never investigated. Gunden failed to argue at sentencing that Craven should get the safety valve as a result of her failure to object to Craven's leadership role.

"A defendant must provide a truthful statement about h involvement in the offense to qualify for safety valve." *United States v. Shakiru*, No. 95-

1488 (6th Cir. 1996). "The District Court, not the government, must decide if a defendant has been truthful." *United States v. Espinosa*, 172 F.3d 795 (11th Cir. 1999); *United States v. Verners*, 103 F.3d 108, 111 (10th Cir. 1996); and *United States v. Schreiber*, 191 F.3d 103 (2d Cir. 1999).

To reiterate, Craven was truthful throughout the proceedings, but lack of effective assistance of counsel led her to be stuck on her initial information provided to the government about offense and relevant conduct.

In this case, the Court sentenced Craven to a term of 240-month sentence (the statutory maximum sentence). Matthew Reeves, a co-defendant, was only sentenced to a term of 168 months' imprisonment (2:19-cr-00019-Z-BR-2).

3.   Failure to Argue for Mitigation of Punishment and Object to Her Sentence Being Substantively Unreasonable

With regard to the 18 U.S.C. § 3553(a) sentencing factors, Gunden failed to file any kind of a motion for a downward variance on behalf of Craven. She also failed to object to Craven's sentence being substantively unreasonable. In this case, Craven's sentence over-represents the seriousness of her offense.

The court's finding of facts were based upon statements improperly admitted at sentencing. Counsel's performance at sentencing was deficient resulting in prejudice to Craven. Had Gunden been prepared, properly argued PSR objections to the offense level enhancements, and argued for mitigation of her sentence, there is a reasonable that Craven would have received a substantially less harsh sentence.

29

4.    Failure to File a Notice of Appeal

The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Rodriquez v. United States,* 395 U.S. 327 (1969); *Roe v. Flores-Ortega,* 528 U.S. 470, 476-77 (2000).

Here, Craven wanted to appeal but Gunden discouraged her and said that, "she can't appeal, she would get life." She never consulted with Craven about a possible appeal.

A lawyer performs deficiently if he "disregards specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000). A lawyer also performs deficiently if he fails to discuss the advantages and disadvantages of an appeal and fails to ascertain the defendant's wishes about an appeal whenever "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 478-80.

To demonstrate ineffective assistance of counsel based on a claim that counsel failed to file a notice of appeal, Craven must show Gunden performed deficiently and that a reasonable probability exists that, but for counsel's deficient conduct, she would have timely appealed. *Flores-Ortega,* 528 U.S. at 476-77, 484, 486. Counsel's

performance is deficient if counsel disregards his client's wishes concerning filing an appeal. *Id.* at 477-78. Craven need not demonstrate that she would have been able to raise a meritorious issue on appeal. *Id.* at 483-86. Instead, if she demonstrates by a preponderance of the evidence that she ordered Gunden to file a Notice of Appeal, prejudice will be presumed, and she should be allowed to file an out-of-time Notice of Appeal. See *Kitchen v. United States*, 227 F.3d 1014, 1020 (7th Cir. 2000). Craven need only show "that there is a reasonable probability that, but for [Gunden] failure, she would have timely appealed." *Id.* at 265.

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, the Court must also consider whether counsel "fully inform[ed] the defendant as to her appellate rights." To meet her constitutional duty, Gunden had to do more than simply give Craven notice "that an appeal is available or advise that an appeal may be unavailing." *Id.* Instead, she must have advised Craven "not only of her right to appeal, but also of the procedure and time limits involved and of her right to appointed counsel on appeal." *Id.* Failure to provide such advice constitutes constitutionally deficient performance. *Id.*

When considering prejudice in a case involving counsel's failure to file a Notice of Appeal, the Sixth Circuit does not require Craven to show that her appeal

31

would have had merit. *Vinyard,* 804 F.3d at 1228 (citing *Flores-Ortega,* 528 U.S. at 486)). The reason that Craven need not make this showing follows the reasoning in *Strickland* that when counsel's acts render a court proceeding unreliable or nonexistent, the Court presumes prejudice with no further showing from the defendant of the merits of her claims. *Flores-Ortega,* 528 U.S. at 484. Thus, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that she otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling her to an appeal." *Id.* As such, "the defendant must only demonstrate that there is a reasonable probability that, but for counsel's failure, she would have timely appealed." *Id.* The Court's focus therefore should be on whether Craven can demonstrate that, but for Gunden's deficient performance, i.e., her failure to file a Notice of Appeal, she would have appealed the District Court's Judgment in a Criminal Case [Doc. 86] in a timely manner. *Flores-Ortega,* 528 U.S. at 484.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Craven's sentence must be vacated. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing should be held so that Craven may further prove her meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: March 8th, 2022

LINDSAY CRAVEN
REG. NO. 58471-177
FMC CARSWELL
FEDERAL MEDICAL CENTER
P.O. BOX 27137
FORT WORTH, TX  76127
Appearing *Pro Se*

33



Lindsay Craven
#58471-177
FMC Carswell
federal medical center
Po box 27137
fort worth, TX 76137

clerk of court
U.S. District Court
Amarillo Division

⟨>58471-177⟨>
Karen Mitchell
205 SE 5TH AVE
Amarillo, TX 79101
United States

RECEIVED
MAR 14 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Legal
Mail



FMC Carswell
P.O. Box 27066
Fort Worth, TX 76127
Mailed: 3-11-22
The enclosed letter was processed through special
mailing procedures for forwarding to you. The letter
has neither been opened nor inspected. If the writer
raises a question or problem over which this facility
has jurisdiction, you may wish to return the material
for further information or clarification.   (4)